## RHINO v. EMERY et al.

(Circuit Court, S. D. Ohio, W. D. March 29, 1897.)

### No. 4,595.

1. EQUITY—NEGATIVE PLEAS.
    Negative pleas are permitted.

2. SAME.
    The averment of heirship in a bill presents a single issue, and a plea framed to meet it is not double, although it negatives two different facts upon which the averment of heirship is based.

3. SAME.
    The averment in a plea that it is not true that the complainant and one of the defendants are the "sole" heirs at law of a certain person contains a negative pregnant, and is not good, there being no denial that they are heirs.

4. SAME.
    The averment in a plea that it is not true that complainant and another are the heirs of a certain person is not good, unless supported by an answer denying the allegations of pedigree in the bill showing that they are heirs of the person in question, on his maternal side.

5. SAME—NECESSITY FOR ANSWER IN SUPPORT OF PLEA.
    Where the case of the complainant stands solely on the bare averment of a particular fact, without the averment of evidence in the bill to support it, it is not necessary for the defendant to file an answer in support of the plea.

This was a suit in equity brought by Gustavus F. Rhino against Thomas J. Emery and others, seeking to hold the defendants, as trustees, to an accounting for certain real and personal property.

This case comes on to be heard upon a plea to the amended bill. The complainant, Gustavus F. Rhino, averring that he is the heir and next of kin of one James Berry, seeks to hold the defendants, as trustees, to an accounting for certain real and personal property which he alleges in his bill was obtained from James Berry by the fraud of William G. Roberts, one of the defendants, and which came into the hands of the other defendants with notice of the fraud. The first part of the bill, in which the heirship of the complainant is set forth, is as follows: "Gustavus F. Rhino, of Hannibal, Missouri, and a citizen of the state of Missouri, brings this, his bill, against Thomas J. Emery and John J. Emery, of Cincinnati, Ohio, and citizens of the state of Ohio: William G. Roberts, of Cincinnati, Ohio, and a citizen of the state of Ohio: and said William G. Roberts, trustee under the last will and testament of Eliza A. Berry; Sarah A. Weller, of Cincinnati, Ohio, and a citizen of the state of Ohio; and M. E. Sperry, of Minneapolis, Minnesota, and a citizen of the state of Minnesota. And thereupon your orator complains, and says that one James Berry intermarried with one Rachel Rolston; and that there was born of said marriage three children, to wit, James Berry, an only son, and two daughters, Nancy Berry and Betsy Berry; and that the said Nancy Berry and Betsy Berry both died without issue; and that the said James Berry, the son of the said James Berry and Rachel Berry (whose maiden name was Rolston), intermarried with one Eliza A. Rhino, a daughter of Abram Rhino and Catherine Rhino (whose maiden name was Catherine Boyd); and the said James Berry, who intermarried with Eliza A. Rhino, as aforesaid, departed this life, testate, in Hamilton county, Ohio, on the —— day of ——, A. D. 1864, leaving, him surviving, his relict, Eliza A. Berry, and two children born of the marriage last aforesaid, to wit, a son, James Berry, and a daughter, Kate E. Berry, as his next of kin and sole heirs at law; and the said Kate E. Berry intermarried with one Robert Brady, whom she survived, and died testate, without issue, July, A. D. 1882; and the said Eliza A. Berry, relict of the said James Berry, died testate, on the —— day of ——, A. D. 1886; and the said James Berry died intestate, without issue, and unmarried, May 13th, A. D. 1891; and at the time of the death of the said James Berry, last aforesaid, to wit, on the 13th day of May, A. D. 1891, the blood of the Berrys and Rolstons, his ancestors on the paternal line, became extinct. And your orator further says that, at the time of the death of the said James Berry, the son of James Berry and Eliza A. Berry, aforesaid, to wit, on the 13th day of May, A. D. 1891, your orator, Gustavus F. Rhino, and the defendant M. E. Sperry, were the nearest of kin and sole heirs at law of the said James Berry, last aforesaid, of the name or family of Rhino; that is to say, your orator was the only son, and the said M. E. Sperry was the only daughter, of John Rhino, a son of Abram Rhino and Catherine Rhino, whose maiden name was Catherine Boyd, as aforesaid, which said John Rhino, then deceased in his lifetime, was the brother of the said Eliza A. Berry, a daughter of the said Abram Rhino and Catherine Rhino, whose maiden name was Boyd, as aforesaid, and which said Eliza A. Berry was the mother of the said James Berry aforesaid, who died May 13th, A. D. 1891; so that your orator, Gustavus F. Rhino, and the said defendant, M. R. Sperry, stood in the relationship of first cousins to the said James Berry, deceased, as aforesaid, and so your orator, as heir at law and next of kin, became entitled upon the death of the said James Berry, on the 13th day of May, A. D. 1891, as aforesaid, to one moiety of the estate, real, personal, and mixed, of which the said James Berry was seised of or entitled to at his death, by virtue of the statute in such case made and provided; the other children of the said Abram Rhino and Catherine Rhino, whose maiden name was Boyd, as aforesaid, to wit, Jefferson Rhino, who in his lifetime was a brother of the said Eliza A. Berry and Prudence Rhino, who in her lifetime was a sister of the said Eliza A. Berry, having each departed this life without leaving any lawful issue." To the bill, Sarah A. Weller, one of the defendants, filed the following plea: "The said defendant, Sarah A. Weller, by protestation, not confessing or acknowledging all or any part of the matters or things in the said amended bill of complaint mentioned to be true in such manner and form as the same are therein set forth and alleged, does plead thereto, and for plea says that, as she is informed and believes, it is not true that at the time of the death of the James Berry

who died on May 13th, 1891, the blood of the Berrys and Rolstons, his ancestors on the paternal line, became extinct, and that it is not true that, on the death of the said James Berry, the complainant and the said defendant M. E. Sperry were his next of kin and his sole heirs at law, all which matters and things this defendant avers to be true, and pleads the same to the said amended bill of complaint, and humbly craves the judgment of this honorable court whether she ought to be compelled to make any further or other answer to the said amended bill of complaint." This plea was set down for argument.

David S. Hounshell and Harlan Cleveland, for complainant.
Herbert Jenney and William Worthington, for defendants.

TAFT, Circuit Judge (after stating the facts). Three objections are made to the plea: First, that it is double, and presents two defenses to the bill; second, that it contains a negative pregnant, in that it only denies that the complainant, Rhino, and defendant Sperry, are sole heirs at law of the intestate, James Berry, but does not deny that they are heirs; and, third, that the plea is not supported by an answer, as it should be.

This is a negative plea. Such pleas are permitted. Mitf. Eq. Pl. (Smith's Ed.) 270; 3 Brown, Ch. 489; 1 Madd. 194; 16 Ves. 264, 265; Sanders v. King, 2 Sim. & S. 277; Thring v. Edgar, 2 Sim. & S. 274. I do not think the plea is double. The plea is filed to traverse the averment of heirship. That presents a single issue, and the plea is framed to meet it. It does not introduce two different defenses.

The objection to the second averment of the plea, that it contains a negative pregnant, is well founded. It would be quite consistent with this averment if the complainant were an heir, and entitled to a share of the estate of James Berry. Therefore the second averment in the plea is bad. It is bad for another reason. The bill sets out a pedigree which shows that Rhino and Sperry are the sole heirs of James Berry on his maternal side. It is with reference to this part of the bill that this averment of the plea is made and its meaning is to be construed. The averments of pedigree in the bill as to the kinship of Rhino and James Berry on the maternal side, if undenied, would defeat the plea in so far as the second averment in it is concerned. It follows that, if the second averment is to be relied on as part of the plea, it was the duty of the defendant to support it by an answer denying the allegations of pedigree in the bill by which it appears that Rhino and Sperry were the heirs and next of kin of James Berry on his maternal side.

But it is well settled that a plea may be good in part and bad in part. Mitf. Eq. Pl. (Smith's Ed.) 343; Story, Eq. Pl. 692; Duncalf v. Blake, 1 Atk. 52; Huggins v. Buildings Co., 2 Atk. 44; Beach, Mod. Eq. Prac. § 294; Kirkpatrick v. White, 14 Fed. Cas. 685. I may therefore overrule so much of the plea as contains the second averment, and treat it as if the plea contained simply a traverse of the averment in the bill "that at the time of the death of the James Berry who died on May 13, 1891, the blood of the Berrys and Rolstons, his ancestors on the paternal line, became extinct." This is the indispensable averment in the bill, upon which depends the right of the complainant to assert any interest in the property made here the subject of the controversy. There are no facts averred

in the bill which, if admitted, would defeat this negative aver-
ment.    Hence, under the modern rule, no answer is required to
support such a plea.    There is· no averment of evidence in the
bill tending to show that the blood of the Berrys and the Rolstons
was extinct.    The ·case of the complainant in the bill stands solely
on the bare averment of this as a fact.    In such a case, it is not
necessary for the defendant to file an answer in support of the
plea.

Judge Wallace, in the case of Hilton v. Guyott, 42 Fed. 249, states
the principle as follows:

"The rule is that a defendant must answer as to facts which would be
evidence to dispute the plea, but he is not required to answer to those things
which may be well admitted consistently with the bar ·pleaded.    If he does
not answer interrogatories upon the argument of the plea, every fact which
they would tend to prove is treated as proved in impeachment of the plea.
But if a plea sets up a defense which appears to be a good bar, notwithstand-
ing all these facts are admitted to be true, it is not necessary to support it by
an answer."

In Sims v. Lyle, 4 Wash. C. C. 301, 22 Fed. Cas. 184, Mr. Justice
Washington said:

· "If the plea be only to a part of the bill, the rest of the bill ought to be an-
swered, or else the court would consider the parts not embraced by the plea.
or answered, as true.    But there is no instance where the plea contains in it-
self a full defense to the bill, that an answer is necessary, unless it is ren-
dered so, in order to negative some equitable ground, stated in the bill for
avoiding the effect of the anticipated bar."    Story, Eq. Pl. § 674;  2 Daniell,
Ch. Prac. (Ed. 1840) pp. 115, 119–122.

In Adams' Equity (Ed. 1890, p. 61) the statement of the rule is
as follows:

"It often happens, where a negative plea is used, that the bill contains al-
legations in evidence of the disputed statement.    In this case the plea of its
untruth will not protect from discovery of matters which would prove it true;
and therefore these allegations must be excepted from the plea, and must be
met by an answer in support."

And again, on page 337:

"In order, therefore, to avoid such discovery, he must resort to a negative
plea denying the allegations of partnership or heirship;  and, until the validity
of his plea is determined, he will be protected from giving discovery conse-
quent on the allegation.    It is, however, very seldom that a pure negative plea
can be made available;  for, although it protects against discovery consequent
on the alleged equity, it does not protect against discovery required to prove
it.    If, therefore, there be any statements in the bill tending to prove the
disputed allegations, distinct from such allegations itself, the discovery asked
on those points must be ,excepted from the plea, and must be given by an
answer in support,"—citing Thring v. Edgar, 2 Sim. & S. 274;  Denys v. Locock,
3 Mylne & C. 205.

I ought to add that the view expressed above with reference
to the answer in support of the negative plea is not that. which
meets the approval of Prof. Langdell in his Equity Pleading.
Langd. Eq. Pl. pp. 116, 117.    He traces the erroneous view to the
decision of Sir John Leach in Thring v. Edgar, 2 Sim. & S. 274,
but he admits the case has had its effect upon modern authorities,
and that they support the conclusion I have stated above.    See

Hunt v. Penrice, 17 Beav. 525; Young v. White, Id. 532; Wilson v. Hammonds, L. R. 8 Eq. 323.

The order of the court will be that the plea is overruled so far as the second averment is concerned, and is held good so far as the first averment is concerned, and the defendant is given leave to file a replication.